IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA EVANS, et al. | : | |
|     Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 15-4095 |
| | : | |
| FITNESS & SPORTS CLUBS, LLC, | : | |
|     Defendant. | : | |

**September_28, 2016**                                                                                                                           **Anita B. Brody, J.**

### MEMORANDUM

Plaintiffs Patricia Evans ("Evans"), and Patricia Evans, Administratrix of the Estate of Brian M. Evans ("Administratrix") bring suit against Defendant Fitness & Sports Clubs, LLC d/b/a LA Fitness ("LA Fitness") for negligence and loss of consortium.[1] I exercise diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. LA Fitness moves for summary judgment. For the reasons set forth below, I will grant LA Fitness' motion for summary judgment.

**I. BACKGROUND**

**A. The Incident**

On November 12, 2014, Evans was participating in a personal training session at LA Fitness with personal trainer Brandon McElwee. Def.' s Mot. Summ. J. Ex. A ¶¶ 6, 9 [hereinafter Compl.]. During the session, McElwee directed Evans to perform "suicide runs," an activity that required Evans to repeatedly run forward to a weight and touch it and then run backward to the start line. Compl. ¶ 10. At one point during the suicide runs, McElwee told

---

[1] Evans brings a claim of negligence and the Administratrix brings a claim of loss of consortium on behalf of the Estate of Brian M. Evans. I will analyze and refer solely to Evans' negligence claim throughout this Memorandum because the claim for loss of consortium is derivative of Evans' negligence claim and dependent on its success. *See, e.g., Kryeski v. Schott Glass Techs., Inc.*, 626 A.2d 595, 602 (Pa. Super. Ct. 1993).

1

Evans to go "faster, faster." Def.' s Mot. Summ. J. Ex. D, at 77:5-6 [hereinafter Evans Dep.]. While Evans was backpedaling she fell backward. Compl. ¶ 11. As a result of the fall, Evans fractured both of her wrists. Evans Dep. 57:9-11. Evans was 61 years old at the time of her injury. Compl. ¶ 6.

**B. The Exculpatory Clauses**

On January 28, 2014, Evans joined LA Fitness and signed a three-page Membership Agreement. Pl.'s Resp. Def.' s Mot. Summ. J. Ex. E [hereinafter Mem. Agrmt.]. Evans signed the first page of the Membership Agreement, initialed two places on the second page, and initialed the bottom of the third page. Right above the signature line on the first page of the Membership Agreement, the following language appears in a separate text box:

> By signing this Agreement, Buyer acknowledges that Buyer is of legal age, has received a filled-in and completed copy of this Agreement has read and understands the entire agreement including but not limited to (1) the **RELEASE AND WAIVER OF LIABILITY AND INDEMNITY**,(2) the *EFT/CC Request (if applicable), (3) the Agreement to Arbitrate all Disputes, and (4) all other Additional Terms and Provisions on the reverse side hereof, including the Membership Policies and Club Rules and Regulations. L.A. Fitness recommends you consult your physician prior to beginning any exercise or weight loss program.

Mem. Agrmt. 1 (emphasis in original). On the second page of the Membership Agreement, a text box at the top of the page contains an exculpatory clause and an arbitration clause printed in larger font than the rest of information on the page. The following exculpatory clause appears in the text box:

> **IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY.** You hereby acknowledge and agree that use by Member and/ or Member's minor children of LA Fitness' facilities, services, equipment or premises, involves risks of injury to persons and property, including those described below, and Member assumes full responsibility for such risks. In consideration of Member and/ or Member's minor children being permitted to enter any facility of LA Fitness (a "Club") for any purpose, including, but not limited to, observation, use of facilities, services or equipment, or participation in any way, Member agrees to the following: Member hereby releases

2

>   and holds LA Fitness, its directors, officers, employees and agents harmless from all liability to Member, Member's children and Member's personal representatives, assigns, heirs, and next of kin for any loss or damage and forever gives up any claim or demands therefore, on account of injury to Member's person or property, including injury leading to the death of Member, whether caused by the active or passive negligence of LA Fitness or otherwise, to the fullest extent permitted by law, while Member or Member's minor children are in, upon, or about LA Fitness premises or using any LA Fitness facilities, services or equipment.. . . [R]isk of injury includes (but is not limited to): injuries arising from use by member or others of exercise equipment and machines, injuries arising from participation by Member or others in supervised or unsupervised activities or programs at a Club; injuries and medical disorders arising from exercising at a Club such as heart attacks, strokes, heat stress, sprains, broken bones, and torn muscles and ligaments, among others; and accidental injuries occurring anywhere in Club dressing rooms, showers and other facilities. Member further expressly agrees that the foregoing release, waiver and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the State of Pennsylvania and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full force and effect. Member has read this release and waiver of liability and indemnity clause, and agrees that no oral representations, statements or inducement apart from this Agreement have been made.

Mem. Agrmt. 2 (emphasis in original). Evans initialed inside the bottom of the text box.

Before signing the Membership Agreement, Evans looked at the Agreement and an LA Fitness employee "perused through" the Agreement with her, but did not go over all of the pages. Evans Dep. 27:23-28:6. Evans received a copy of the Membership Agreement after she signed it, and "read some of it." *Id.* at 30:3-9. After reading the Release and Waiver of Liability and Indemnity section of the Membership Agreement during her deposition, Evans did not have "any understanding" of the waiver of liability. *Id.* at 31:24-32:20.

On April 14, 2014, Evans also signed a three-page Personal Training Agreement and Release of Liability ("Personal Training Agreement") with LA Fitness. Pl.'s Resp. Def.' s Mot. Summ. J. Ex. F [hereinafter Pers. Training Agrmt.]. Evans signed each page of the Personal

Training Agreement. The paragraph above the signature line on the first page of the Membership Agreement contains the following language:

> By signing this Agreement Client acknowledges that Client has read, understood and agreed with all terms and conditions of this Agreement, after having the opportunity to have it reviewed by an attorney at the discretion of Client. Client further acknowledges Client has received a filled-in and completed copy of this entire Agreement, which includes the **_ACKNOWLEDGMENT & ASSUMPTION OF RISK_** and the **_LIMITATION OF LIABILITY & FULL RELEASE OF LAF_** on page 2 . . . .

Pers. Training Agrmt. 1 (emphasis in original). On the second page of the Personal Training Agreement, a text box on the right side of the page contains assumption of risk,[2] exculpatory, and arbitration clauses printed in larger font than the rest of information on the page. The following exculpatory clause appears in the text box:

> **LIMITATION OF LIABILITY & FULL RELEASE OF LAF**:
> Client agrees to fully release LAF [LA Fitness], its owners, employees, affiliates, authorized agents and independent contractors from any and all liability, claims, demands or other actions that Client may have for injuries, disability or death or other damages of any kind, including but not limited to, direct, special, incidental, indirect, punitive or consequential damages, whether arising in tort, contract, or breach of warranty, arising out of participation in the Services, including, but not limited to, the Physical Activities, even if caused by the negligence or fault of LAF, its owners, employees, affiliates, authorized agents, or independent contractors. Client is urged to have this Agreement reviewed by an attorney before signing.

*Id.* at 2 (emphasis in original). Evans signed inside the bottom of the text box, and at the bottom of page two. The last page of the Personal Training Agreement is a New Client Checklist, which Evans signed at the bottom. The first item on the New Client Checklist is the following acknowledgement: "**I have received** and read a copy of my entire Personal Training Agreement . . . ." *Id.* at 3 (emphasis in original).

---

[2] The assumption of risk clause includes the acknowledgement: "Client agrees to assume all risk and responsibility involved with Client's participation in the Physical Activities." Pers. Training Agrmt. at 2.

Before signing the Personal Training Agreement, an employee of LA Fitness discussed the agreement with Evans. Evans Dep. 36:5-8. Additionally, Evans "looked at" the language in the text box, but "didn't actually review it." *Id.* 38:13-18. Evans also "read through some of" the New Client Checklist before signing it. *Id.* 39:15-21.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The materials in the record that parties may rely on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  In opposing a motion for summary judgment, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

**III.  DISCUSSION**

LA Fitness moves for summary judgment on the basis that the exculpatory clauses in the Membership Agreement and the Personal Training Agreement bar Evans' suit.[3]  An exculpatory clause is valid if the following conditions are met: 1) the clause does not contravene public policy; 2) the contract is between parties relating entirely to their own private affairs; and 3) the contract is not one of adhesion.  *Topp Copy Prods., Inc. v. Singletary*, 626 A.2d 98, 99 (Pa. 1993). A valid exculpatory clause is only enforceable if "the language of the parties is clear that a person is being relieved of liability for his own acts of negligence." *Id.*

LA Fitness argues that the exculpatory clauses are valid and enforceable because they do not violate public policy and are entirely related to the parties' own affairs, and the contract is not one of adhesion.  Moreover, LA Fitness contends that the contracts clearly relieve it from liability for its own negligence.

A waiver of liability violates public policy only if it involves "a matter of interest to the public or the state.  Such matters of interest to the public or the state include the employer-employee relationship, public service, public utilities, common carriers, and hospitals. *Seaton v. E. Windsor Speedway, Inc.*, 582 A.2d 1380, 1382 (Pa. Super. Ct. 1990); *see also Kotovsky v. Ski Liberty Operating Corp.*, 603 A.2d 663, 665 (Pa. Super. Ct. 1992).

---

[3] LA Fitness also moves for summary judgment based on Evans inability to establish a prima facie case of negligence.  Because I will grant the motion for summary judgment on the basis that the exculpatory clauses bar suit, I need not address this argument.

Here, the Membership Agreement and the Personal Training Agreement relate solely to the private affairs of the parties. As LA Fitness correctly contends, the exculpatory clauses do not contravene public policy because they do not affect a matter of interest to the public or the state. *See Kotovsky*, 603 A.2d at 665-66 (holding that releases did not violate public policy because "[t]hey were [in] contracts between private parties and pertained only to the parties' private rights. They did not in any way affect the rights of the public."). Thus, the exculpatory clauses meet the first two prongs of the *Topp Copy* standard for validity.[4]

LA Fitness also contends that the contract meets the third prong of the *Topp Copy* validity standard because it is not a contract of adhesion. Agreements to participate in "voluntary sporting or recreational activities" are not contracts of adhesion because "[t]he signer is a free agent who can simply walk away without signing the release and participating in the activity, and thus the contract signed under such circumstances is not unconscionable." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1190-91 (Pa. 2010). "The signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services, but merely governs a voluntary recreational activity." *Id.*

---

[4] While an exculpatory clause in a health club contract does not contravene public policy under Pennsylvania law, Judge Lazarus argues that waivers of liability in health club contracts should be void as against public policy because they implicate health and safety concerns. *Hinkal v. Pardoe,* 133 A.3d 738, 747-49 (Pa. Super. Ct. 2016) (en banc) (Lazarus, J., dissenting), *appeal denied*, 141 A.3d 481 (Pa. 2016). If New York law had governed these contracts, then the exculpatory clauses very likely would have contravened public policy. *See id.* at 749 ("Every covenant, agreement or understanding in . . . any contract . . . entered into between the owner or operator of any . . . gymnasium . . . and the user of such facilities, pursuant to which such owner or operator receives a fee . . . for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, *shall be deemed void as against public policy and wholly unenforceable*." (quoting N.Y. Gen. Oblig. §5-326)).

The Membership Agreement and the Personal Training Agreement with LA Fitness are not contracts of adhesion because they are contracts to participate in voluntary recreational activities. Evans was under no compulsion to exercise at a gym and to participate in personal training sessions. *See Hinkal v. Pardoe*, 133 A.3d 738, 741-2 (Pa. Super. Ct. 2016) (en banc), *appeal denied*, 141 A.3d 481 (Pa. 2016) (citing the "thorough and well-reasoned opinion" of the trial court, which held that the plaintiff's gym membership agreement was not a contract of adhesion because exercising at a gym is a voluntary recreational activity and the plaintiff was under no compulsion to join the gym). The Membership Agreement and the Personal Training Agreement meet all three prongs of the *Topp Copy* standard for validity. The exculpatory clauses are facially valid.

Even if an exculpatory clause is facially valid, it is enforceable only if it clearly relieves a party of liability for its own negligence. The following standards guide a court's determination of the enforceability of an exculpatory clause:

> 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clause.

*Topp Copy*, 626 A.2d at 99. While the contract must clearly convey a waiver of liability for negligence, "Pennsylvania courts have consistently held that exculpatory clauses may bar suits based on negligence even where the language of the clause does not specifically mention negligence at all." *Chepkevich*, 2 A.3d at 1193.

LA Fitness argues that the language of the exculpatory clauses in the Membership Agreement and the Personal Training Agreement unambiguously establish LA Fitness' intent to

8

relieve itself of liability for negligence. Both agreements explicitly bar suits arising from LA Fitness' negligence. The Membership Agreement states:

> Member hereby releases and holds LA Fitness . . . harmless from all liability to Member . . . for any loss or damage and forever gives up any claim or demands therefore, on account of injury to Member's person . . . , whether caused by the active or passive negligence of LA Fitness or otherwise, to the fullest extent permitted by law.

Mem. Agrmt. 2. The Personal Training Agreement states:

> Client agrees to fully release LAF [LA Fitness] . . . from any and all liability, claims, demands or other actions that Client may have for injuries . . . arising out of participation in the Services, including, but not limited to, the Physical Activities, even if caused by the negligence or fault of LAF, its owners, employees, affiliates, authorized agents, or independent contractors.

Pers. Training Agrmt. 2. Thus, LA Fitness has established its immunity from this negligence suit based on the language of the exculpatory clauses.

Despite meeting the standards set forth in *Topp Copy*, Evans contends that the exculpatory clauses are unenforceable because they are not sufficiently conspicuous.[5] Evans relies primarily on *Beck-Hummel v. Ski Shawnee, Inc.*, 902 A.2d 1266 (Pa. Super. Ct. 2006), to argue that the waivers are not enforceable. The *Beck-Hummel* court addressed the enforceability of a waiver of liability printed on the back of a tubing ticket. In *Beck-Hummel*, the injured plaintiff's husband had purchased the tubing ticket, no employee of the tubing facility had ever notified the plaintiff or her husband that they were entering into a contractual agreement by purchasing the ticket, and neither spouse had read the exculpatory clause. 902 A.2d at 1267-68. Moreover, the exculpatory language appeared in a font that was "just barely readable," and smaller than the font used for some other portions of the ticket. *Id.* at 1274-75. In the absence of a signed agreement between the parties, where the existence of a contract could not be

---

[5] Evans relies, in part, on her assertion that she used an electronic signature screen to sign her name and initial the agreements. This assertion, however, is unsupported by the factual record.

determined as a matter of law, the *Beck-Hummel* court looked to the conspicuousness of the waiver of liability as a means of establishing whether or not a contract existed. *Hinkal*, 133 A.3d at 745. The *Beck-Hummel* court set forth three factors to consider in determining conspicuity: 1) the waiver's placement in the document; 2) the size of the waiver's font; and 3) whether the waiver was highlighted by being printed in all capital letters or a different font or color from the remainder of the text. *Beck-Hummel*, 902 A.2d at 1274. After considering these factors, the *Beck-Hummel* court could not conclude as a matter of law that the exculpatory clause was enforceable because neither spouse had read the ticket and the language of the ticket was not sufficiently conspicuous as to put the purchaser/user on notice of the waiver. *Id.* at 1275.

Unlike the circumstances in *Beck-Hummel*, Evans signed two written contracts that contained exculpatory clauses. In *Hinkal*, the en banc Superior Court of Pennsylvania examined whether the *Beck-Hummel* conspicuity requirements for the enforcement of exculpatory clauses applies to signed valid written contracts. *Hinkal*, 133 A.2d at 743-45. In *Hinkal*, the plaintiff had signed a membership agreement with Gold's Gym that contained a waiver of liability for negligence claims on the back page. *Id.* at 741. Relying on *Beck-Hummel*, the plaintiff argued that the exculpatory clause was not enforceable because it was not sufficiently conspicuous and she never read or was told to read the back of the agreement. *Id.* at 743. The *Hinkal* court found the plaintiff's comparison of her case to *Beck-Hummel* "inapposite" because unlike the waiver printed on the back of a tubing ticket that did not require a signature, the Gold's Gym waiver appeared in a signed agreement that contained an unambiguous directive not to sign until reading both sides. *Id.* at 744-45.

The *Hinkal* court noted that conspicuity is generally not required to establish the formation of a contract, but "has been resorted to as a means of proving the existence or lack of a

contract," where it is unclear whether a meeting of the minds occurred. *Id.* at 745. The *Hinkal* court explained that:

> The existence of a valid written contract, however, cannot be supplanted by imposing undefined conspicuity requirements as essential elements to all contract formations. To do so would substantially alter the landscape of contract formation and allow a properly executed contract to be set aside through one party's failure to do what the law requires: to read the contract before signing.

*Id.* The *Hinkal* court concluded that the plaintiff's failure to read her contract before signing it did not render the contract either invalid or unenforceable. *Id.* at 743. Without addressing the *Beck-Hummel* factors for conspicuity, the *Hinkal* court held that the waiver of liability was valid and enforceable because the plaintiff had signed the agreement, which contained a clear directive not to sign before reading both sides.

As held in *Hinkal*, no conspicuity requirements apply because this case involves exculpatory clauses in signed health club agreements.[6] Evans signed both the Membership Agreement and Personal Training Agreement that contained exculpatory clauses. Before signing each agreement, Evans looked at the agreement and an employee of LA Fitness discussed it with Evans. Moreover, an acknowledgement that Evans had read and understood the entire agreement, including the release and waiver of liability, appears directly above Evans signature on the first page of each agreement. The exculpatory clauses in the Membership Agreement and

---

[6] Even if the *Beck-Hummel* conspicuity requirements applied, the exculpatory clauses in the Membership Agreement and the Personal Training Agreement would still be enforceable. Evans acknowledged the release and waiver of liability on the first page of the agreements and signed right below each acknowledgement. While each exculpatory clause appears on the second page, it is conspicuously set apart from other language in the contract by a text box, the heading of each clause appears in bold capital letters, and the font of each clause is larger than some other portions of the contract. Additionally, Evans had to initial or sign inside the bottom of the text box that contained each exculpatory clause. Moreover, the title of the agreement for personal training should have notified Evans of the waiver because it was labeled "Personal Training Agreement and Release of Liability." Lastly, unlike the plaintiff in *Beck-Hummel*, Evans admits that she looked at each agreement before signing it and discussed it with an LA Fitness employee.

11

the Personal Training Agreement are valid and enforceable because they meet the standards set forth in *Topp Copy*.

**IV. CONCLUSION**

    I will grant LA Fitness' motion for summary judgment because the exculpatory clauses in the Membership Agreement and the Personal Training Agreement bar Evans' negligence suit against LA Fitness.

                                                     s/Anita B. Brody

                                                    _____
                                                    ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                      Copies **MAILED** on _____ to: